ANNA PETERSUN v. MYSTIC WORKERS OF THE WORLD.[1]

December 6, 1918.

No. 20,952.

**Insurance — breach of warranty of health.**

1. In an action against a fraternal beneficiary association to recover on an insurance certificate, the defense was a breach of the warranty that the insured was in good health and free from kidney disease when the insurance was applied for and effected. The jury found that the defense was not made out. The evidence fairly supports the verdict.

**Appeal and error — harmless error.**

2. The court did not commit reversible error in excluding what a witness advised the insured to do in regard to procuring this insurance; what the witness advised not being necessary for a correct understanding of the admissions which the witness testified Petersun then made.

**Insurance — question for jury.**

3. The evidence did not warrant the submission of any breach of the warranty other than as stated in defendant's requested instructions given by the court.

**Same — photograph admissible as corroborative evidence.**

4. There was no error in receiving a picture of the insured as corroborative of the testimony that he went on a hunting expedition.

Action in the district court for Brown county to recover $1,200 upon defendant's insurance certificate. The facts are stated in the opinion. The case was tried before Olsen, J., and a jury which returned a verdict in favor of plaintiff for $1,312.80. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Somsen & Dempsey* and *Charles E. Sturtz,* for appellant.

*Albert Hauser,* for respondent.

HOLT, J.

Two juries have found that plaintiff was entitled to recover upon an insurance certificate issued by defendant, a fraternal beneficiary associa-

[1]Reported in 169 N. W. 598.

tion, to her deceased husband. The trial court refused to disturb the last verdict and defendant appeals.

Evert Petersun, plaintiff's husband, applied for membership and insurance on May 6, 1915. He was accepted and the insurance certificate was delivered to him June 4, 1915. He died from diabetes on February 29, 1916. Death having occurred within one year from the date of membership, the amount due the beneficiary was $1,200, instead of $2,000, the face of the certificate. Due proof of death was made, but defendant denied liability, and this action was brought. The defense alleged, and sought to be established, was a breach of the warranty that Petersun was in good health and free from kidney disease at the time he applied for insurance and that he continued so to be until the certificate was delivered to him, the allegation being that "the said Evert Petersun was not then at the time of making such warranty, nor had he been from the date of his medical examination and admission in good health and free from disease continuously, but he, the said Evert Petersun, was then and had been during all that time suffering from a disease of the kidneys known as diabetes, and that as a result of said disease" he died.

No question is made of the warranty. The issue submitted to the jury was whether defendant had maintained the burden of proving the breach alleged. The claim is that the verdict against defendant on this issue is not justified by the evidence and is contrary to law. Mr. Petersun was 36 years old when he applied for membership in defendant. He was operating a creamery in a small village. In the latter part of May, 1915, he consulted a doctor, the ailment being dryness or irritation of the throat. The physician, Dr. Ruud, testified that Petersun told him that he drank abnormal quantities of water and also voided an excessive amount of urine. Tests of the urine showed the presence of sugar. Doctor Ruud testified he diagnosed the trouble as diabetes, and, on June 3, so informed Mr. Petersun and plaintiff, who was present. Shortly thereafter deceased visited a specialist in Minneapolis who prescribed a diet and rest. Petersun stayed in bed a few days, then went about his business as usual. Samples of urine were tested during the summer. Mrs. Petersun testified that no sugar was found in the urine after June 10; Dr. Ruud says sugar disappeared on June 23, and was never afterwards found, until late in the year. It appears, perhaps with some con-

tradiction, that during all the time from May 6 until late in November, Petersun attended to his work as usual, and in addition thereto frequently went hunting in September and October. And in the first part of November he took a strenuous hunting trip, of some ten days, for large game in the woods of Pine county. Witnesses for defendant testified to symptoms of Mr. Petersun and to admissions by him and plaintiff upon which medical experts based the opinion that he was afflicted with diabetes. It also appears that an occasional presence of sugar in urine does not necessarily mean diabetes, or any other illness. It is only when constant that diabetes is to be suspected. Defendant's examining physician, who examined Petersun May 13, found nothing in the urine, and certified to Petersun's being in perfect health and fit condition for admission. Two medical experts, called by plaintiff, gave their opinion that Petersun was not afflicted with diabetes on June 4 when received into membership by defendant. In this situation of the record this court cannot hold that the verdict is not justified by the evidence. The learned trial court considered that it was, and we entertain the same view. The evidence in plaintiff's favor is not so inherently weak or improbable, or so opposed by documentary or other proof of convincing cogency that a new trial should be granted under such decisions as Voge v. Penney, 74 Minn. 525, 77 N. W. 422, and Messenger v. St. Paul City Ry. Co. 77 Minn. 34, 79 N. W. 583.

Defendant produced a witness who testified to a conversation with Petersun relative to accepting any insurance after Dr. Ruud had diagnosed his condition as diabetic. On motion by plaintiff the court struck out what the witness said to Petersun as to the advisability of then seeking insurance, ruling that such advice of the witness was immaterial, but permitting the witness to relate everything Petersun said on that subject and also what he told concerning his state of health or indicative of knowledge that it was not good. What the witness advised Petersun to do cannot be material, the only purpose to be legitimately served by relating what the witness said would be to give meaning to what Petersun was expressing, if that meaning was otherwise in doubt or unintelligible. But, if the jury believed the witness, there was no mistaking the import of the statements he testified Petersun made. The chief object of defendant in having the whole conversation, including what the witness said, was to show knowledge on the part of Petersun that he was then ill with diabetes.

141 M.—12.

Such knowledge was of slight, if any, importance, for the jury were charged that if they found "from the evidence that the insured, Evert Petersun, was not in good health but had diabetes at the time of the delivery to him of the certificate of insurance, then plaintiff cannot recover * * * even though [he] * * * did not know that he had such disease at that time."

There is a contention that the court should have submitted as a separate defense the question of ill health other than diabetes. We think the charge is not open to criticism in this respect. There was no evidence of any ill health other than so-called symptoms which, taken together, pointed to diabetes, according to the claim of defendant's medical experts. If not indicative of that disease they were not suggestive of any impairment of health worth mentioning. Temporary irritation of the throat, a tired feeling for a few days, an occasional presence of sugar in the urine, were not deemed incompatible with what is generally accepted as good health by any one of the medical experts in the case. The presence of great thirst and excessive urine was in dispute. The instruction above quoted was prepared by defendant and given at its request. It is in consonance with the defense pleaded and, we think, as broad as the evidence warrants.

A snapshot picture of Petersun and his two companions at their hunting camp, taken during the November hunt, was received in evidence over defendant's objection. It was received simply as corroborative of the testimony that the deceased did go out on a hunting expedition. Everyone appreciates that a picture of that sort does not visualize the state of health of the person "taken;" it does quite all expected of it when those who know the person well are able to recognize him as the one depicted.

No error was made in the ruling.

The order is affirmed.